121-1603 W.C. Flossmoor School District 161 Appellant v. Illinois Workers' Compensation Comm'n Laura Maldonado-Appley v. Paul Luca Mr. Powers, you may proceed. Thank you. Justices, Counselor, before I start, I just want to make sure you can all hear me. Is that correct? Yes. Okay, I just wanted to make sure. May it please the Court, Counselor, my name is Theodore Powers and I represent the Appellant, the Flossmoor School District regarding this matter. This appeal stems from the Appley claimant's fall on a school parking lot back in November, November the 24th, 2014, resulting in a fractured ankle. There are three issues that are presented on appeal. The first issue is whether the injury occurred in the course of the employment where the claimant was not scheduled to work and had no authority to be at work at the time of the accident. Second, assuming the claimant proved that she was in the course of employment, there is a further issue as to whether the injury rose out of the employment where the evidence failed to establish there was an increased risk of injury due to defects on the parking lot premises where she fell. And then finally, the third argument is the Commission's PPD award for both a loss of a foot and a loss of a leg was proper for an ankle fracture. As a matter of law, based upon essentially the Commission's award of two scheduled injuries or two scheduled body parts for the same injury and failing to apply the analysis under Section 8.1B in making a PPD determination. Just as a start, Justice, I just want to quickly go to the PPD award. I think it is probably the most obvious or problematic issue here as it involves what the Commission did. We have an award for both the ankle fracture resulting in a 50% loss of use of the foot and then also the Commission decided to award for the same injury, the fractured ankle, an award for a 35% loss of the leg. Now, we're awarding essentially or the Commission is awarding essentially two scheduled injuries, a leg and a foot for the same condition. And I know that counsel will probably argue that, well, wait a minute, there's a fracture of the tibia and the fibula and that's the leg. And, you know, so we therefore have both the leg and as well as the ankle fracture. However, and as I discussed in my brief, the problem with that analysis is that the distal tibia and fibula are part of the ankle joint. That is the area at the end where the foot actually starts. It's the articulation of that joint. So it's not a leg injury, it's an ankle injury. And if they wanted to say that it was a loss of a leg, that would be a great argument, but then they couldn't also then say that was both an ankle injury and a leg injury. In regards to the evidence, other than the ankle, there's no other injury to the left leg of the claimant. There's no problem with the knee, no problem with the proximal portion of her shin bones, no problem with the hip, the thigh. It's simply an ankle fracture. The records verify that as a matter of fact, when she last received treatment, her complaint for of ankle pain. And mind you, there's nothing wrong. I mean, I looked at the award for the 50% and she had three surgeries. And so 50% loss of a foot is probably fine. But the award then for 35% of the leg is a double recovery. It's for the same injury. And if you look at the amounts in terms of the each body part, they're comparable. So she's getting essentially the same value for the ankle as well as for the leg. To compound that problem with the PPD award, they failed, the commission failed to do the A1B analysis that it is required to do, to weigh the factors and to provide an explanation, a written explanation as to how they made that determination. Mr. Powers, did either party in this case submit a physician's disability report? I'm sorry, what? Either party submit a physician's disability report is contemplated by A1B. No, the respondent did not. Okay. What about the claimant? The claimant filed one? I don't believe so. I don't believe there was one. And so for that, the analysis under A1B, that would not be given any weight under that factor. There were four other factors then for the courts or to the commission to talk about and discuss. So they failed. Now, interestingly, Sugar Court agreed. Well, they failed to do that. They're required to do that under the statute. And so as a matter of law, they didn't do it. But golly, it's not against the manifest weight. So I guess the Sugar Court's view was they should have done it, and the law wasn't applied, but the facts are good on it. But clearly, the PPD award does require this court's attention. If anything else, we're looking at a remand to have them calculate an award, do it according to the statute, and also in terms of to specify and to provide an explanation if they're going to make double award, how are they going to determine that? Because we don't have that from this decision. We don't know how they came up with those two awards. We then now go to the actually, they're just as important. And actually, I'm going to start in the course of the time and space requirement when someone has an injury at work, as this court is quite aware, we have in the course of and then we have a rising out of employment. In the course of, we have a situation of a secretary to claim it. And she is a normally would work from 730 to four o'clock every day. However, due to the nature of school business, those hours aren't normally set, but she wasn't always on a set schedule. And her times could change based upon the circumstances of the school and whatever was going on. On this particular date of accident, it was a Monday before Thanksgiving. And it was parent teacher conference day, there was no school in session. It wasn't a regular school day. And what we had was the parent teacher conferences were to start later in the day later in the morning, I believe 11 o'clock. And there was a meeting that was from the school that petitioner was to attend, he was given an email in that regard, that would be the start of her day to go, you know, first go to the district office for the meeting, and then they would then return and do this parent teacher conferences. Council doesn't state that in the email, you took it, there's a leap there, there's an email, there's time of the meeting. And you just indicated that that's when she's to show up to work and can work afterwards. Correctly, the principal or supervisor testified that she sent her an email telling her she was to report to work at 10 o'clock when she went to that meeting at the school district, they're going to discuss I think residency issues and something else according to the record. Does it does it state report to work or report to the meeting at 10 o'clock? Report to the meeting, the actual email was not introduced into evidence, my understanding. However, the testimony of the principal was that she said sent that email and I believe the petitioner said she received the email about the day started at 10 o'clock to report. And where do you get that? That's that's what I'm trying to drill down. Where do you get that information that day starts to report at 10 o'clock? I I've read what I could what's available and it states that she's to attend a meeting at 10 o'clock but you seem to infer there's more to it. Yeah, well there are certain things you can figure out there. Her day actually did start at 10 o'clock or that was the schedule. First of all, he could only work seven hours a day because he was a union employee and they can only work seven seven hours a day. They had parent teacher conferences which were going to go into the evening and that's what they discussed. They discussed the fact that she would be there longer than a regular 7 30 to 4 o'clock because of those of those conferences. Where is that discussion memorialized? That's in the testimony I believe from either the principal and or from the assistant superintendent LaBella where they discussed the fact that those hours her hours were going to be different than the 7 30 to 4 o'clock because of other conferences. And that that's why that's why the school didn't start and her day did not start until 10 o'clock and that's in justice that's perhaps where where if you put all these facts together you can understand the start time was for 10 o'clock in the morning. Mr. Powers even though the schedule and the start time might have changed did she not fall while walking to her a mandatory work meeting? Yeah there's no question about that but she wasn't scheduled to be at work at that point. So she had not started her work when she reported to the meeting that would have been the start of her work for that day. This was not a regularly scheduled day. Her day did not consist of and she had no authority if she wanted to start work at 7 30 as she reported she needed authority to do that because she would have exceeded her seven hour work day. That's the testimony from the principal and from and or from the assistant superintendent LaBella. So even though she's walking to her vehicle to attend a mandatory meeting you're saying that it wasn't she wasn't supposed to be there when she fell? Is that your argument? Correct she hadn't she there was no there was no work purpose for her to be on the premises at that time. What is a mandatory meeting that's not work? Mandatory meeting is starting at 10 o'clock and that's where they were supposed to meet. That was the start of her day. She was not she had no work purpose because because she started at 7 30. The accident happened before 10. She did not start work was not scheduled to start work until 10 o'clock on November the 24th. Is it is it your contention am I getting you correctly that if an employee is scheduled to start work at eight o'clock in the morning and parks their car in a employer provided parking area and gets out of the car at 7 45 in the morning it's not in the you're asking. Obviously that under that scenario where she's going to work and into the parking lot um then there is that leeway that reasonable time period where she is considered to be in the course of because she's walking to go into to work. In this scenario let's change the the fact pattern just for a second. Let's assume that she gets into her car she goes to the school and she gets out and she slips and fall. That would be compensable because she was supposed to be in that lot on those premises to go to that meeting. She was at at this point in time she wasn't scheduled to be at work at the school before 10 o'clock. She wasn't supposed to be at school. She's supposed to go to the school district for the meeting. How did she know that? Counsel what what what specifically in the record states that uh you're not to show up until 10 o'clock? The testimony was and she knew that there was a meeting at 10. The the evidence and the testimony from the principal was that the school day was not going to start until 10 till the meeting. What else is needed? I don't know. I don't know. I mean I've looked at the evidence. I I know that there's mention of snow and ice. Well that's what the commission found. Pardon me? Didn't the commission find that that you fell? The commission found it but but when they found that all the arbitrator which   adopted by the commission all the arbitrators said that that the the claimant indicated that it was snowy and I think rainy and and windy and that I guess she slipped and fell. However, the arbitrator didn't address the fact that there were witnesses at the scene and it was wet. There's no question it was wet out. Uh there's no question from their testimony that there was coming down and rain but there's also no dispute that in fact we had wet. We didn't have ice. We didn't have snow. We didn't have salting. There was no indication of any black ice that she talked about and remember four years after the accident was a trial and we have snow and slush. I think she just elaborating so now it was slushy. Mr. Powers that may all be true and that's a very argument but if the commission believed her where are you going with that? Well I'm going with the fact that her testimony is inconsistent because when she gave a recorded statement soon after the accident she didn't know why she fell. Yeah but who determines credibility Mr. Powers? Isn't it the commission? The commission determines the credibility but that does not negate this court's need to weigh that evidence and determine whether it's sufficient. So despite counsel let me ask you this despite your representation or the weather conditions might have the commission taken into account the arbitrator and then the commission the testimony that the claimant states that it was snowing. It was like wet snow. I don't know how to say it maybe like slushy kind of snow. Isn't that isn't it? But here's the thing she never once testified that she slipped on ice and the evidence was regardless of what she said she said it was wet then it later it was snow but all the testimony even the witnesses that were there at the time it was wet. There wasn't snow on the ground. She didn't say she slipped on ice. If she's saying it maybe it was black ice that's speculating. She didn't know. It's her burden to prove her burden to prove that there was a risk there and that her fall was due to that risk that there was a defect due to that that snow or ice and all we have if you look at collectively all the all the evidence and testimony it was simply wet. Even the claimant's testimony was it was wet. That's not ice. That's not snow. Mr. Powers are there any further questions from the court at this time? No. Okay. You'll have time and reply. Thank you very much. Okay. Mr. Luca you may respond. Please the court as as the panel was indicating I'll pick up where we left off in terms of the the testimony about the slushy snowy conditions that were as the claimant testified like black ice and of course the arbitrator the finder of fact and credibility believed her as this panel aptly aptly noted. Wait a minute before you go too far. The arbitrator makes a finding which the commission adopted. He says she this according to her testimony she slipped on the parking lot where there was ice and a little snow on the ground in was unable to get up on her own. As she was on the ground where she fell she noticed black ice and she did not that she did not see it while walking to her car and cites the transcript pages of the record. Is that an incorrect assessment of what she actually testified to? No and and I don't have that cite in front of me but even so I think that the evidence that the totality of the evidence that the arbitrator heard he's allowed to make a reasonable inference that if there is I if there's wet pavement and snow and slush that those are the conditions that engender black ice and what else happened the other things that happened in the incident are way beyond the preponderance of the evidence threshold in terms of what happened. It it it is a it it is an inference that the arbitrator can make based on the evidence that black ice existed especially where the the complainant or the claimant testified that was slush and like black ice and saw black ice on the ground. The shifting over to the course and scope of the employment argument case law says that an injury arises out of employment if among other things an employee is engaged in acts which might reasonably be expected she might reasonably expected to perform incident to the assigned duties. The testimony shows at in the common law record at c 457 to 459 and c 352 that the claimant had a plan to meet the principal at the school prior to the meeting but that the evidence more than enough evidence by which the the arbitrator could determine that the school expected the claimant to show up to work at the school first and then proceed to the meeting from the school. Regardless council talks about how she wasn't scheduled to work but she actually did work she had the record shows the testimony shows that she actually did punch in at 7 38 I believe that early 9 7 7 39 39 I'm sorry your honor 7 39 that morning and she was presumably paid for the work that she did it would be illegal not to pay her and the union argument that she's supposed to work seven hours a day that's without authorization and the testimony in the record that shows that the principal had planned to meet her at the school but changed her own plans shows that there's by a preponderance of the evidence that she had authorization but whether she did have authorization or not doesn't matter in that she actually did go to work and it's something that the principal certainly could have expected was reasonably incident didn't she testify she actually worked at sienna hills until it was time to leave to go to the meeting yes and she said that when she was at work she uh went to work at a usual time to prepare for the parent-teacher conference that is correct okay um um with regard to the other issue in terms of the injury itself council talks about how there was 50 loss of use awarded to the foot for the ankle pathology but it is not a double recovery as council would have us believe in that the analysis that was provided by the arbitrator shows that the the three surgeries that the claimant had for example were primarily focused on floating bodies in the ankle joint and problems with the ankle in addition to the ankle injury however the claimant had a fractured fibula that required a plate to be affixed to the fibula with six screws and so it is certainly within the arbitrator's ken to determine that she suffered a leg injury of a fracture of the fibula as well as an ankle injury fracture of trimalleolar fracture of the ankle those are two different body parts as is shown in the pele brief the uh the malleoli are part are at the end of the fibula in the tibia however the the claimant's injury extended beyond the malleolus all all that uh all that the respondent keeps talking about is the fact that there's malleolar fractures which there are but there also fractures of the fibula so the arbitrator was well within his limit to look at the medical evidence and determine that there was a leg injury and an ankle injury and that is supported in fact by the medical evidence that shows toward the end of her treatment the claimant was in a leg and ankle brace and crutches because of instability and also suffered leg and ankle pain which which segues into the point about 8 1 b the statute says that the arbitrator of the commission must explain it doesn't say that that the arbitrator of the commission must expressly call out each factor by name in a written opinion it says it must explain it in a written opinion and the arbitrator had done that doesn't doesn't this the act state in determining the level of disability the relevance and weight of each factor used in addition to the level of impairment as reported by a physician must be explained in a written order where is it explained in the the piece of the arbitrator's decision that explains the basis for the ppd award is recounted actually in the respondent's reply and the omission of factors two through four the age occupation and earning capacity shows that the arbitrator gave literal or no weight to those factors well how do we know that if he doesn't mention it how do we how do we make that assumption because he doesn't mention him well maybe it was an oversight in his part and that's the problem well it's clear from the record that she went back to work in a sedentary job as a secretary and that it didn't impact her earning capacity her age and um and those factors have to do more with um earning capacity in in jobs that that they are a factor so if the statute says they must clearly acknowledge and mention and analyze the factors the fact that they don't you're saying we can presume that the arbitrator and the commission didn't find them to be significant is that your position yes it is in the same same spirit that uh corn belt energy said that the statute mentions that the american medical association ratings must be referenced if they're not the commission can still assess a ppd rating there's no question the commission can assess a ppd rating in the an impairment report by a physician but i read you the section of the statute you still haven't given me an answer it says in determining the level of disability the relevance and weight of any factor used in addition to the level of impairment in this case there was none must be explained in a written order where in this order is it talk about either relevance or weight of any of the factors set forth in 8.1 where there is none expressly well then if there is none if there is none they fail to comply with the statute and if they fail to comply with the statute they got to do it right i mean they're obligated to follow this statute they've got to explain the relevance and weight of any factor other than the impairment report or an impairment you don't do it i mean i think that that position is i think indefensible i i understand your honor's point i think that um it's just that it's clear that because they mentioned no weight was was assigned to those factors because the record shows that they're not factors in in the ppd rating that was given it was based on the medical evidence of disability corroborated by the medical records and because the claimant returned to her position in a law in this particular circumstance and so certainly uh where your honor says that the arbitrator did not comply with calling out each of the factors by name remanding the case to to have them do so would would result in findings that they were i mean it's not only they have to call them out by name they've got to say the weight and the relevance given to each one in the written order what it says was i missed something um the relevance and weight uh the relevance and weight of any factors that's not a that's not it doesn't say that they have to address each factor it said i'm looking at the statute now your honor it says the relevance and weight of any factors used in addition to the level of impairment as reported by the physician must be explained and the arbitrator did do that the factors that he did weigh his or base his opinion on are indeed explained and if we were to expand it to require him to mention those other factors age future incapacity and occupation then the record shows that those issues are moot because she did return to her employment so i think that's the key and that it doesn't require the arbitrator to to mention each it requires the arbitrator to mention any and he did do so okay and and just uh to to conclude the arbitrator found by a preponderance of the evidence of course that ice existed and that the complainant was in the course and scope of her employment when she fell in fact the arbitrator says that it's it's indisputable and and i think your honor the panel uh mentioned that she actually did clock in at 7 39 and worked and was going to a mandatory meeting and slipped and fell out next to her assigned parking space i think it is the record shows it is indisputable um but in any case the arbitrator found this based on credibility determinations that far exceed the preponderance of the evidence and found in the petitioner's favor around those points and awarded the ppd that that he did and the arbitrator's opinion shouldn't be disturbed because nothing that has been presented by the respondent meets the the high manifest way to the evidence standard okay any questions from the court no no okay thank you mr luca mr powers may reply thank you your honor i'll be brief um i just want to just a couple of things that council mentioned he discussed the the and i know one of the justices discussed the black ice testimony and just so it's clear you have to remember uh based upon the evidence when she gave her reporting statement soon after this accident she didn't say that she slipped on black ice she questioned whether or not was there black eyes but at the same time we keep in mind that we had the custodian who was there immediately when the accident occurred he didn't talk about there being black eyes that it was slippery uh we had the the claimant indicating salt wasn't put down if there was black ice out there he would would presume the custodian there he would have said that there was a council we don't reweigh the evidence if there's any evidence in the record competent evidence from which the commission can draw its conclusion we've got to affirm and i quite frankly can't figure out how you're getting around morris harvey i'm getting the morris harvey case that cites all the supreme court cases that an employee who falls on a parking lot provided by the employer while proceeding to work is subject to the hazard for which the general public is not exposed and they cite the de hoyas and all the supreme court cases this is a run-of-the-mill parking lot case she clocked in at 7 39 she went to work well but that's the other argument judge because then we're talking about in the course of and i have addressed that with you and you and i can can differ in terms of our thoughts on that but the fact that she's at a place that she's not scheduled to start work at i i believe to work did she do was she work was it gratuitous the time she spent in there before she went back out to go to the meeting i i don't know i don't know if she forgot that there was a meeting that just went to work and and didn't remember that it didn't start till 10 that's go and prepare for the meeting for the parent teacher conference right and and that was the only thing that was said and i don't know what that was about but we have the other evidence from the principal that she wasn't she wasn't supposed to be at work that early and by the way counsel had made a comment that there was an arrangement for the principal to pick her up principal denied that but that aside i just want to end this off with with the analysis about the ppd in the comments uh we don't know why uh the arbitrator and the commission you know awarded for both a foot and a leg because there was not compliance with um section 8 1b there wasn't any ankles and that would include the ends of the tibia and the fibula or loss of foot cases it is the ankle joint there is no explanation because the commission did an 8 1b analysis for that there's no explanation as to how they decided that it was worth both a comparable amount for both a leg and for an ankle for the same injury so i if anything else and as i started my presentation today justices i i started with the ppd i think it's the most obvious problem with the case um and i if anything else i would ask that this court uh reverse the ppd award and have it remanded for a proper decision very well thank you mr powers thank you counsel both for your arguments in this matter it will be taken under